# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **KENNETH RAY BRYANT,** ) | |
|    Plaintiff ) | |
| ) | Civil Action No. 2:19cv00040 |
| v. ) | |
| ) | **REPORT AND** |
| **ANDREW SAUL,** ) | **RECOMMENDATION** |
| **Commissioner of Social Security,** ) | |
|    Defendant ) | By:  Pamela Meade Sargent |
| ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Kenneth Ray Bryant, ("Bryant"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 423 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bryant protectively filed his application for DIB on June 20, 2016, alleging disability as of June 30, 2015, based on heart problems; residuals from an injury to his forearm; a heart attack; bladder cancer; arthritis; back pain; possible black lung disease; and an inability to lift. (Record, ("R."), at 15, 175-76, 198.) The claim was denied initially and upon reconsideration. (R. at 91-93, 97-99, 102-06, 108-10.) Bryant then requested a hearing before an administrative law judge, ("ALJ"). (R. at 111-12.) The ALJ held a hearing on July 17, 2018, at which Bryant was represented by counsel. (R. at 32-61.)

By decision dated October 15, 2018, the ALJ denied Bryant's claim. (R. at 15-27.) The ALJ found that Bryant met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2020. (R. at 17.) The ALJ found that Bryant had not engaged in substantial gainful activity since June 30, 2015, the alleged onset date.[1] (R. at 17.) The ALJ determined that Bryant had severe impairments, namely degenerative disc disease and malignant neoplasm of the bladder, but he found that Bryant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.) The ALJ found that Bryant had the residual functional capacity to perform light[2] work that required no more

---

[1] Therefore, Bryant must show that he was disabled between June 30, 2015, the alleged onset date, and October 15, 2018, the date of the ALJ's decision, in order to be eligible for benefits.

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent

-2-

than occasional climbing, stooping and kneeling and no more than frequent crouching and crawling; and that did not require him to push or pull more than 20 pounds occasionally and 10 pounds frequently. (R. at 19.) The ALJ found that Bryant was able to perform his past relevant work of a composite job of electronic motors salesperson and electric motor repair supervisor. (R. at 25.) In addition, based on Bryant's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Bryant could perform, including the jobs of an assembler, a packer and an inspector. (R. at 25-26.) Thus, the ALJ concluded that Bryant was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 27.) *See* 20 C.F.R. § 404.1520(f), (g) (2019).

After the ALJ issued his decision, Bryant pursued his administrative appeals, (R. at 169), but the Appeals Council denied his request for review. (R. at 1-5.) Bryant then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2019). This case is before this court on Bryant's motion for summary judgment filed February 18, 2020, and the Commissioner's motion for summary judgment filed March 19, 2020.

## *II. Facts*

Bryant was born in 1957, (R. at 36, 175), which, at the time of his alleged onset date, classified him as a "person of advanced aged," and at the time of the

---

lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2019).

ALJ's decision, classified him as a person "closely approaching retirement age," both under 20 C.F.R. § 404.1563(e). Bryant has some college education and vocational training in electrical repair and business management. (R. at 36-37, 199.) He has past work experience as a shop foreman for an electrical repair shop. (R. at 37.) Bryant stated that he was unable to get medical treatment because he did not have insurance or any income. (R. at 42.) He stated that he took an aspirin a day for his heart problems. (R. at 42.) Bryant stated that he took over-the-counter pain medication every two to three days for his back pain. (R. at 45.)

John Newman, a vocational expert, also was present and testified at Bryant's hearing. (R. at 52-60.) Newman classified Bryant's past work as an electric motor repair supervisor and electric motor salesperson as light, skilled work. (R. at 56-57.) He stated that there were no transferrable skills to the sedentary[3] exertion level. (R. at 57.) Newman testified that a hypothetical individual of Bryant's age, education and work history, who had the residual functional capacity to perform light work; who could occasionally climb, stoop and kneel and frequently crouch and crawl, could perform Bryant's past work. (R. at 57.) In addition, Newman found that other work existed in significant numbers that such an individual could perform, including jobs as an assembler, a packer and a bottling line attendant. (R. at 57-58.) Newman stated that the same hypothetical individual, but who was limited to occasionally working at unprotected heights, and around hazardous machinery and vibration, could perform both past work and the other jobs previously identified. (R. at 58.) He stated that no jobs would be available should

---

[3] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2019).

the individual be limited to occasionally lifting and carrying items weighing up to 10 pounds and frequently lifting and carrying items weighing less than 10 pounds; who could sit for six hours in an eight-hour workday; and who could stand and walk for two hours each in an eight-hour workday. (R. at 59.) Newman further stated that there would be no jobs available for an individual who could sit only four hours in an eight-hour workday and stand up to one hour in an eight-hour workday. (R. at 59.)

In rendering his decision, the ALJ reviewed medical records from Dr. Nicolas Tulou, M.D., a state agency physician; Dr. Jack Hutcheson, M.D., a state agency physician; Wellmont Medical Associates; Mountain States Health Alliance; Dr. Kurt A. Ick, M.D.; Indian Path Medical Center; Dr. D. Kevin Blackwell, D.O.; The Health Wagon; Pikeville Medical Center; and Dr. Michael R. Green, M.D.

Bryant's medical history consists of a right arm laceration from a mining accident in 1981, a myocardial infarction in 2008 and bladder cancer with cystoscopy and removal of lesions in 2013 and August 2016. (R. at 261, 277, 310.)

On June 29, 2016, Bryant saw Dr. Kurt A. Ick, M.D., a urologist, for complaints of blood in his urine. (R. at 261.) Dr. Ick noted that Bryant had been noncompliant for follow up, as he previously was seen for a Grade I transitional cell carcinoma, ("TCC"), of the bladder with his last transurethral resection of bladder tumor, ("TURBT"), in 2013. (R. at 261.) Bryant's urinalysis and cystoscopy confirmed a recurrence of the TCC, and Dr. Ick recommended a repeat TURBT. (R. at 261, 265-66.) On August 2, 2016, Bryant underwent a TURBT without difficulty. (R. at 267-68.) He had a successful voiding trial a few days later, and Dr. Ick recommended a surveillance cystoscopy. (R. at 259.)

On September 12, 2016, Dr. Michael R. Green, M.D., conducted a black lung evaluation. (R. at 309-29.) Bryant's chest was clear to auscultation and percussion; his heart had regular rate and rhythm without any murmurs or gallops; and his extremities had no clubbing or edema. (R. at 310.) A pulmonary function test showed Bryant's forced expiration volume one second, ("$FEV_1$"),[4] was 2.82 percent, 89 percent of the predicted $FEV_1$. (R. at 311, 320.) The $FEV_1$ and forced vital capacity, ("FVC"), ratio was 81 percent, 76 percent of the predicted $FEV_1$/FVC ratio. (R. at 320-21.) Spirometry demonstrated no evidence of airflow obstruction with normal flow parameters. (R. at 311.) A resting arterial blood gas study demonstrated acute hyperventilation with preservation of oxygenation. (R. at 311, 325-26.) An electrocardiogram, ("ECG"), showed sinus rhythm with a possible anterior wall myocardial infarction of indeterminate age and nonspecific ST and T wave changes. (R. at 311, 328.) A chest x-ray was normal. (R. at 311.) Dr. Green diagnosed coal worker's pneumoconiosis and chronic obstructive pulmonary disease, ("COPD"), based on Bryant's reported 20-year occupational history of exposure to respirable coal and rock dust, in addition to his history of chronic sputum production, wheezing and shortness of breath. (R. at 311.) Dr. Green opined that Bryant was not totally disabled from a pulmonary capacity standpoint. (R. at 311.) Dr. Green noted non-pulmonary disabling diagnoses of coronary artery disease and arthritis involving Bryant's neck and low back.[5] (R. at 312.)

On November 3, 2016, x-rays of Bryant's cervical spine showed

---

[4] $FEV_1$ refers to how much a person can exhale in the first second of spirometry testing. It is used to stage an individual's COPD. *See* healthline.com/health/fev1-copd (last visited Sept. 29, 2020).

[5] It is noted that Dr. Green's evaluation involved only a pulmonary examination and testing.

straightening of the cervical lordosis; the vertebral bodies had normal alignment, height and density; the inferior portion of the C7 and T1 disc spaces were not visualized; there was narrowing of the C5-C6 and C6-C7 disc spaces; and he had degenerative spurring from the C4 through C7 disc spaces. (R. at 291.) X-rays of Bryant's lumbar spine, also dated November 3, 2016, showed a loss of lumbar lordosis; mild retrolisthesis of the L4-L5 and L5-S1 levels; the vertebral bodies had normal alignment, height and density; there was multi-level disc space narrowing most prominent at the L2-L3 and L4-L5 levels; there was scattered hypertrophic spurring; and the pedicles and sacroiliac joints were intact. (R. at 293.)

On November 6, 2016, Dr. D. Kevin Blackwell, D.O., examined Bryant at the request of Disability Determination Services. (R. at 271-75.) Bryant was in no acute distress; he had good mental status; his affect, thought content and general fund of knowledge were intact; his lungs were clear to auscultation, and he had no labored breathing; his heart had regular rate and rhythm without murmurs, clicks or rubs, and his upper and lower lobes were good and equal bilaterally; he had no cyanosis or edema in his extremities; he had some crepitus and pain in both knees with palpation; he had tenderness in the lumbar musculature; his gait was symmetrical and balanced; his shoulder and iliac crest heights were good and equal bilaterally; his upper and lower joints had no effusion or obvious deformities; his upper and lower extremities were normal for size, shape, symmetry and strength; his grip strength was normal and equal bilaterally; his fine motor movement and skill activities of the hands were normal; his reflexes in the upper and lower extremities were good and equal bilaterally; and his proprioception was intact (R. at 273-74.) Dr. Blackwell diagnosed chronic low back pain with right sciatica; bilateral knee pain; right forearm pain; history of coronary artery disease; history of myocardial infarction with stent; history of dyspnea with possible black lung

disease; and bladder cancer. (R. at 274.)

Dr. Blackwell opined that Bryant could lift items weighing up to 30 pounds occasionally and 10 pounds frequently; he could sit up to four hours in an eight-hour workday and stand up to one hour in an eight-hour workday, assuming normal positional changes; he should avoid bilateral above-head reaching, operation of foot pedals, squatting activities and kneeling a "certain" amount of the day; and he should avoid crouching, crawling, working at unprotected heights and repetitive and continuous stair climbing. (R. at 274.) No visual, communicative, hearing or environmental limitations were noted. (R. at 274.) Dr. Blackwell opined that Bryant had no limitation of hand usage, including fine motor movement and skill activities. (R. at 274-75.) Dr. Blackwell noted that his objective findings correlated with Bryant's subjective complaints. (R. at 274.)

On November 8, 2016, Dr. Nicolas Tulou, M.D., a state agency physician, found that Bryant had the residual functional capacity to perform light work. (R. at 69-70.) He found that Bryant could push and pull items weighing no more than 20 pounds occasionally and 10 pounds frequently; he had an unlimited ability to balance; he could frequently crouch and crawl; and he could occasionally climb, stoop and kneel. (R. at 70.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 70.)

On February 2, 2017, Dr. Jack Hutcheson, M.D., a state agency physician, found that Bryant had the residual functional capacity to perform light work. (R. at 80-81.) He found that Bryant could push and pull items weighing no more than 20 pounds occasionally and 10 pounds frequently; he had an unlimited ability to balance; he could frequently crouch and crawl; and he could occasionally climb,

stoop and kneel. (R. at 81.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 81.)

On February 28, 2017, Bryant established care at The Health Wagon. (R. at 279-81, 301-03.) Bryant complained of head and chest congestion and chest pain. (R. at 279-80, 301.) Teresa Tyson, F.N.P., a family nurse practitioner, reported that examination of Bryant's heart and lungs was normal. (R. at 280, 302.) Bryant had a recurrence of sinusitis; unspecified angina pectoris; an old myocardial infarction; a personal history of malignant neoplasm of the bladder; and essential hypertension. (R. at 280, 302.) On March 31, 2017, Bryant reported that he occasionally had heart palpitations. (R. at 277-78, 304-05.) Bryant's cardiopulmonary, musculoskeletal, neurological and psychological examinations were normal. (R. at 277, 305.) Bryant was diagnosed with an old myocardial infarction, hypertension and hyperlipidemia. (R. at 277, 305.)

On June 7, 2017, Bryant was seen by Dr. Pramesh Dhakal, M.D., a physician with Pikeville Medical Center, for coronary artery disease and hypertension. (R. at 295-97.) Bryant had no chest discomfort suggestive of ischemia; he had no palpitations, syncope or near syncope; he had no discoloration or ulceration of the lower extremities; he had no stroke-like symptoms; and he exhibited no symptoms attributable to valvular heart disease. (R. at 295.) Dr. Dhakal reported that Bryant's respiratory, cardiac and vascular examinations were normal. (R. at 296.) Dr. Dhakal diagnosed coronary artery disease without angina pectoris; mixed hyperlipidemia; hypertension; and nicotine dependence. (R. at 296.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2019). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2019).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether

substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Bryant argues that the ALJ's decision is not based on substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-9.) Specifically, Bryant argues that the ALJ erred by failing to properly evaluate the opinions of Drs. Blackwell and Green. (Plaintiff's Brief at 7-9.) Bryant also contends that the ALJ impermissibly used his inability to obtain and maintain treatment against him. (Plaintiff's Brief at 8.)

The ALJ found that Bryant had the residual functional capacity to perform light work that required no more than occasional climbing, stooping and kneeling and no more than frequent crouching and crawling; and that did not require him to push or pull more than 20 pounds occasionally and 10 pounds frequently. (R. at 19.) In making this residual functional capacity finding, the ALJ stated that he was giving "some weight" to the opinions of Dr. Blackwell and Dr. Green. (R. at 22.) The ALJ stated that he was giving Dr. Blackwell's opinion some weight because it was an overstatement of the severity of Bryant's limitations based on the medical evidence of record. (R. at 22.) The ALJ also noted that Dr. Blackwell was vague at times, such as when he described Blackwell's limitations in terms of a "certain amount of the day." (R. at 22.) In addition, the ALJ noted that Dr. Blackwell examined Bryant on one occasion in 2016, and he did not have the benefit of longitudinal treatment. (R. at 22.) The ALJ also stated that he was giving Dr. Green's opinion some weight because it was vague and did not provide a detailed residual functional capacity. (R. at 22.) *See* 20 C.F.R. § 404.1527(c)(4) (2019)

(providing for more weight where an opinion is consistent with the record as a whole).

While Dr. Green opined that Bryant was not totally disabled from a pulmonary capacity, he did, however, note that Bryant had a "disabling diagnosis" of coronary artery disease and arthritis involving his neck and low back. (R. at 311-12.) It is clear from Dr. Green's report that his evaluation consisted of only a pulmonary examination and testing, and he appears to make his "disabling diagnosis" based on Green's reports of his medical history. (R. at 309-29.) In addition, Dr. Green did not provide a detailed residual functional capacity assessment.

The ALJ gave "significant weight" to the state agency consultants who opined that Bryant had the residual functional capacity to perform light work. (R. at 22-23, 69-70, 80-81.) While the ALJ, in general, is required to give more weight to opinion evidence from examining versus nonexamining medical sources, the ALJ is not required to give controlling weight to the opinions of a treating source. *See* 20 C.F.R. § 404.1527(c) (2019). In fact, even an opinion from a treating physician will be accorded significantly less weight if it is "not supported by clinical evidence or if it is inconsistent with other substantial evidence…." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Furthermore, the ALJ is entitled to rely on a nonexamining source's medical opinion where that opinion is supported by the record as a whole. *See Alla Z. v. Berryhill*, 2018 WL 4704060, at *11 (W.D. Va. Sept. 30, 2018); *see also* 20 C.F.R. § 404.1527(c)(3) (2019).

The record shows that Bryant's physical examinations generally were normal, in that his chest was clear to auscultation and percussion, and he had no

-12-

labored breathing; his heart had regular rate and rhythm without any murmurs or gallops; his extremities had no clubbing or edema; his gait was symmetrical and balanced; his upper and lower joints had no effusion or obvious deformities; his upper and lower extremities were normal for size, shape, symmetry and strength; his range of motion of all joints was normal; his reflexes in the upper and lower extremities were good and equal bilaterally; and he had normal grip strength with normal fine motor movement and skill activities. (R. at 271, 273-74, 277, 280, 296, 305, 310.) Furthermore, Bryant testified that he took a baby aspirin a day for his heart problems, and he took only over-the-counter pain medication every two to three days for his back pain. (R. at 42, 45.)

Bryant contends that the ALJ impermissibly used his alleged "lack of ability to obtain and maintain treatment" against him. (Plaintiff's Brief at 8). I find this argument unpersuasive. Bryant had access to medical sources and treatment during the relevant period of review. Bryant was treated by his treating urologist, Dr. Ick, examined by two consultative examiners and established care with a primary care physician and a cardiologist. (R. at 257-68, 271-75, 279, 295, 301, 309-12.) The evidence demonstrates that Bryant recovered quickly from the recurrence of his bladder surgery, and within days of his outpatient surgery, Bryant had a successful voiding trial. (R. at 259, 267.) The record does not indicate that any medical source recommended any other specialized treatment.

Based on the above, I find that the ALJ properly weighed the evidence and that substantial evidence exists to support the ALJ's residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's residual functional capacity finding;

2. Substantial evidence exists in the record to support the ALJ's weighing of the medical evidence; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Bryant was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Bryant's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of

the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   September 30, 2020.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE